48310. RADLO OF GEORGIA, INC. v. LITTLE.

Argued July 2, 1973 — Decided July 16, 1973 — Rehearing denied July 30, 1973 —

*Robinson, Buice, Harben & Strickland, Emory F. Robinson,* for appellant.

*Telford, Steward & Stephens, J. Douglas Stewart,* for appellee.

Deen, Judge. ■ The contract contained the following provisions under which the defendant contends that its action in removing

the hogs and terminating the contract were justified: "Should Radlo determine that the hogs placed with the producer are not being properly fed or cared for in accordance with the prescribed management program, Radlo shall have the right to terminate this agreement and take immediate possession of the hogs and remove them from the farm if it deems such action necessary" and "Radlo may at its option terminate the agreement and take possession of the hogs without notice, court action or liability upon the happening of any one of the following: . . . any other reason or event which Radlo in the exercise of a reasonable discretion deems itself insecure or that the hogs are in danger of misuse." The defendant contends that this amounts to a contractual agreement that performance must be judged solely by the satisfaction of the defendant, that its right to terminate is absolute so long as not exercised fraudulently or in bad faith, and that the trial court erred in withdrawing from jury consideration a requested charge substantially to this effect in the language of *Atlanta Realty Co. v. Campion,* 94 Ga. App. 136 (93 SE2d 781): "Where one contracting party agrees to perform services to the satisfaction of or satisfactory to the other party, compliance with the contract is not shown unless it appears that the thing done. . . does in fact satisfy the other party." That case involved a real estate listing contract providing that terms must be "satisfactory to the seller." In *MacDougald Constr. Co. v. State Hwy. Dept.,* 125 Ga. App. 591 (1) (188 SE2d 405) it was held that a clause leaving a decision to the "judgment and discretion of the contractor" involved a question of good faith but not of erroneous judgment. Paragraph 10 of the contract here refers to objective criteria prescribed for the management program but leaves to Radlo the determination of plaintiff's compliance therewith; paragraph 13, however, relating also to termination of the contract in the event it feels the hogs are in danger of misuse specifies that this must be "in the exercise of a reasonable discretion." We do not believe the contract, taken as a whole, gives Radlo the uninhibited right to terminate at will because of personal dissatisfaction on the part of its management; the discretion conferred on it must be *reasonable,* that is, judged by the standard of what a reasonable producer would decide under the circumstances. Even when performance is conditioned upon the satisfaction of the opposite party, which is not the case here, there are two general rules. One, the test of satisfaction as a personal decision relates generally to subjective standards of satisfaction and the other "the 'reasonable man' rule, that the

promissor is legally bound to be satisfied with the articles or services furnished by the other party if a reasonable man would have been satisfied with them" is generally applied where the criteria are objective and easily ascertainable. 17 AmJur2d 809, Contracts, § 367. The trail court, accordingly, did not err in rejecting the request to charge based entirely on the personal satisfaction of Radlo with the results obtained.

The question of whether Little had in fact breached the contract was properly left for jury decision. The evidence was in sharp conflict. Under that offered by Radlo it appeared that the death rate of newborn pigs was inordinately high due to lack of properly constructed pens, lack of water facilities, failure to give medication, lack of sanitation and inadequate supervisory care. The plaintiff's testimony attributed the high death rate to disease inferably resulting from failure of Radlo to provide proper feed, an increased number of sows necessitating facilities Little had not been required to provide, and so on. Since there was evidence sufficient to authorize a verdict either way on this defense, it will not be disturbed by this court.

2. Enumerations of error 7, 8 and 9, as well as the general grounds, raise a question of proof of damages, and the charges relative thereto. The rule of course is that where, in a suit for damages for breach of contract, the plaintiff fails to present evidence supplying data sufficient to enable the jury to estimate with reasonable certainty the amount of his loss traceable to the breach, he is not entitled to judgment in his favor. *Bennett v. Associated Food Stores,* 118 Ga. App. 711 (2) (165 SE2d 581). *Bennett* involved the alleged breach of a rental contract, and was, as the opinion holds, entitled, if the lessee's defense failed, to recover lost profits, meaning the specified rentals less the expense of performance, which latter would include truck maintenance, depreciation, and so on. Since the rental figure was specified in the contract, the burden there was on the lessor to show the sums attributable to his expense which should be deducted from it, and this he failed to do.

In the present case, the plaintiff, using the payment schedule set out in the contract, must offer proof which would allow a jury to reasonable conclude both the gross payment and the expenses of earning it if he is to base his recovery on lost future profits. The plaintiff's expenses, after his original investment in readying the pens for use, was one for services. All of the testimony shows that while food, medicine, cartage and so on were the responsibility of

the defendant, the care of the animals, feeding, attendance at farrowing time, cleaning, castrating, and other procedures demanded fairly constant attendance. While he had agreed to obtain the services of a full time adult prior to the time the hogs were reclaimed, he had not been able to do so. He himself had a full time job, and the operation had been in charge of his 16 year old son and another boy. He is basing recovery of lost profits on a premise that he would sell back to Radlo between 7 and 8 pigs per sow litter, but his average for the seven months of his operation was 2.7, which, under his own cost figures, amounted to an overall loss. He has therefore completely failed to show, experientially or otherwise, any loss of profit on future litters which is not completely speculative and conjectural. Code § 20-1406. Without having some indication of the plaintiff's ability to keep down the infant mortality rate, it cannot be said that his projected profits are capable of exact or even reasonably probable computation. "A distinction is drawn between claims for profits derived from a new business venture and those derived from a going concern. The general rule is that evidence of expected profits from a new business is too speculative, uncertain, and remote to be considered, and does not meet the legal standard of reasonable certainty. Accordingly, recovery for lost profits is not generally allowed for injury to a new business with no history of profits." 22 AmJur2d 245, Damages, § 173. While we have found no Georgia case involving the future sale of unborn livestock, we have a solid body of law involving the future sale of ungrown crops, to the effect that on a breach of contract to supply seed, fertilizer, and the like which has a deleterious influence on the raising of the crop, loss of prospective profits resulting therefrom is too remote and speculative to be recoverable, and the measure of damages must be limited to the necessary expense which the aggrieved contracting party incurred in complying therewith. *Butler v. Moore,* 68 Ga. 780 (45 AR 508); *Savannah Chemical Co. v. Bragg & Son,* 14 Ga. App. 371 (2) (80 SE 858); *Prince v. Evans,* 23 Ga. App. 660 (2) (99 SE 132); *Codman v. Roberds,* 27 Ga. App. 559 (9) (109 SE 536); *Stafford v. Mock,* 31 Ga. App. 204 (2) (120 SE 424). See, generally, *Anderson v. C-R-C Law List Co.,* 22 Ga. App. 368 (95 SE 1012) (attorney could not recover for loss of business because subscription with forwarding agency wrongfully cancelled); *Kingston Pencil Corp. v. Jordan,* 115 Ga. App. 333 (2) (154 SE2d 650) (loss of customers due to defective machinery); Eastern Federal Corp. v. Avco-Embassy Pictures, 326 FSupp. 1280 (D.C. Ga.)

(anticipated profits lost because of delay in opening new theater due to defendant). If the past performance of the plaintiff here be used as the criterion, he proved no loss of profits because he was operating at a loss. If it be not so taken, there is no basis for judging what his future performance might have been. His measure of damages for the defendant's breach, accordingly, could not be laid on this premise, but rather on that set out in *Butler v. Moore*, 68 Ga. 780, supra, and it was error to submit this issue to the jury.

*Judgment reversed and remanded for new trial. Bell, C. J., and Quillian, J., concur.*